OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether the 15-year-old plaintiff, who was injured while constructing a “pipe bomb”, can maintain a tort action against the 9-year-old defendant who allegedly sold the firecrackers from which the plaintiff’s companions extracted the gunpowder used to construct the bomb. The trial court granted summary judgment dismissing the cause of action against the defendant and his parents for alleged negligent supervision. The Appellate Division affirmed. The plaintiff has appealed by leave of this court.
*23 The facts are in dispute; however, for the purposes of this appeal, dealing with a motion for summary judgment, we must accept the plaintiff’s version of the events, as the lower courts have done.
On June 25, 1976 the plaintiff, George Barker, and two companions, Ayman and Anas Kallash, made a “pipe bomb” in the backyard of the Barker home in Brooklyn. At the time the plaintiff was nearly 15 years old and the Kallash brothers were 14 and 15, respectively. The bomb was made by filling a metal pipe, three or four inches long and one inch wide, with gunpowder.
The plaintiff concededly obtained the pipe from his father’s home workshop where he also found the caps to seal it and a power drill he used to make a hole for the fuse. Although his father also used gunpowder to reload shotgun shells at home, the plaintiff contends that the gunpowder used in the bomb was supplied by the Kallash brothers who extracted it from firecrackers. He testified, at an examination before trial, that they had told him that the day before the incident they had purchased firecrackers from the defendant Daniel Melucci, Jr., who was not quite nine years old at the time. Indeed, the plaintiff testified that he had told the Kallash brothers where the firecrackers could be purchased. The injury occurred after the pipe had been capped at one end and the plaintiff, and one of the Kallash brothers, had poured the gunpowder into it. As the plaintiff was screwing the second cap on to the pipe it exploded, severely injuring his hands.
Plaintiff, through his father, brought an action against the Kallash brothers for their part in constructing the bomb, against Daniel Melucci, Jr., for allegedly selling the firecrackers to the Kallashes, and against Robert Judge, another infant, who allegedly sold the firecrackers to Melucci. In each instance the plaintiff also sued the infants’ parents for negligent supervision.
After examination before trial, the Meluccis -moved for summary judgment, principally on the ground that the plaintiff is barred from recovering for injuries sustained while engaged in wrongful or illegal conduct. The trial court granted the motion holding that the plaintiff “by participating in the making of a pipe bomb was engaged in *24 wrongful if not illegal conduct” and noted that the courts of this State have consistently refused “to allow a party to establish a claim based on his own wrongful conduct”. The court also observed that the “fact that New York now has a comparative negligence or fault statute (CPLR 1411) would have no bearing upon this established public policy”. After this motion was granted, the Kallashes moved to dismiss the cause of action against them on the same ground. Determination of that motion was stayed pending this appeal.
The Appellate Division affirmed noting that the “kind of activity in which plaintiff was engaged when injured cannot be passed off lightly as mere prankish or foolish conduct * * * Certainly, this case constitutes a striking illustration of the potential for grave harm to life and limb that such a dangerous instrumentality possesses, and is the most powerful of evidence in support of the conclusion that pipe bomb making, which has been condemned by the Penal Law, is beyond any doubt injurious to the public interest”. The court also found no merit to the plaintiff’s reliance on CPLR 1411 (91 AD2d 372, 377).
At the outset a distinction must be drawn between lawful activities regulated by statute and activities which are entirely prohibited by law. In the first instance, it is familiar law that a violation of a statute governing the manner in which activities should be conducted, would merely constitute negligence or contributory negligence (see, e.g., Platz v City of Cohoes, 89 NY 219; Martin v Herzog, 228 NY 164; Corbett v Scott, 243 NY 66; Humphrey v State of New York, 60 NY2d 742). Such cases would today be resolved under the rule of comparative negligence (CPLR 1411). However, when the plaintiff has engaged in activities prohibited, as opposed to merely regulated, by law, the courts will not entertain the suit if the plaintiff’s conduct constituted a serious violation of the law and the injuries for which he seeks recovery were the direct result of that violation. In this latter instance recovery is denied, not because the plaintiff contributed to his injury, but because the public policy of this State generally denies judicial relief to those injured in the course of committing a serious criminal act (Reno v D’Javid, 42 NY2d 1040). In *25 the Reno case a woman who submitted to an illegal abortion could not recover for alleged negligence on the part of the physician performing the operation (Reno v D’Javid, supra). The rule is based on “the paramount public policy imperative that the law, whatever its content at a given time or for however limited a period, be obeyed” (Reno v D’Javid, supra). It extends the basic principle that one may not profit from his own wrong (Riggs v Palmer, 115 NY 506; Carr v Hoy, 2 NY2d 185) to tort actions seeking compensation for injuries resulting from the plaintiff’s own criminal activities of a serious nature.
The rule denying compensation to the serious offender would not apply in every instance where the plaintiff’s injury occurs while he is engaged in illegal activity (see Restatement, Torts 2d, § 889, Comment b). Thus if the plaintiff in the example cited above had been injured in an automobile accident as a result of another’s negligence, she would not be denied access to the courts merely because she was on the way to have the illegal operation performed (see, e.g., Restatement, Torts 2d, § 889, Comment b, Illustration 3). A complaint should not be dismissed merely because the plaintiff’s injuries were occasioned by a criminal act (cf. Humphrey v State of New York, 60 NY2d 742, 744, supra; Scurti v City of New York, 40 NY2d 433). However, when the plaintiff’s injury is a direct result of his knowing and intentional participation in a criminal act he cannot seek compensation for the loss, if the criminal act is judged to be so serious an offense as to warrant denial of recovery (Reno v D’Javid, supra).[1] Thus a burglar who breaks his leg while descending the cellar stairs, due to the failure of the owner to replace a missing step cannot *26 recover compensation from his victims. As indicated the rule is grounded in public policy and holds that a claimant whose injuries are the direct result of his commission of what is judged to be serious criminal or illegal conduct is not entitled to recover. It involves preclusion of recovery at the very threshold of the plaintiff’s application for judicial relief.
The plaintiff urges that this rule should not apply to his case for a number of reasons. Many of the arguments have theoretical appeal, as the dissent has demonstrated. None, however, are sufficient on the facts of this particular record to warrant sending the case to a jury.
First, he contends that his acts were not so egregious and that the case in essence involves nothing more than “a claim arising out of injuries suffered by one of several youngsters playing with fireworks shortly before the Fourth of July”. It is true that not every violation of the law, no matter how petty or slight, will serve to completely resolve a question of tort liability (Corbett v Scott, 243 NY 66, supra). A plaintiff will be precluded from seeking compensation where his injuries were a direct result of a serious violation of the law involving hazardous activities which were not justified under the circumstances. In the case before us the plaintiff’s conduct may not fairly be characterized as a minor dereliction. By his own admission his injuries did not result from the mere use of firecrackers, but from his efforts to incorporate the gunpowder extracted from the firecrackers into a pipe bomb. Constructing a bomb is a far more dangerous activity not only to the maker, but to the public at large, and is treated as a far more serious offense under the law (compare Penal Law, § 265.02, subd [2], with Penal Law, § 270.00, subd 2). Certainly if the plaintiff had decided to use the gunpowder in a gun, it could not be said that he was merely playing with firecrackers because the powder had originally been obtained from firecrackers. In addition, as the Appellate Division noted, the extent of the plaintiff’s injuries, which were a foreseeable consequence of a mishap, testify to the serious nature of his conduct.[2]
*27 Secondly, the plaintiff claims dispensation from the general rule because of his age, not quite 15 at the time of the incident. He notes that at that age he could not be convicted of a criminal offense (Penal Law, § 30.00, subd 1) and urges that he should be granted a similar exemption from the rule precluding tort recovery for injuries resulting from an otherwise serious criminal act. Although the plaintiff may not be held criminally responsible for his conduct, the fact remains that constructing a bomb is prohibited by law (Penal Law, § 265.02, subd [2]). Notably even the criminal law does not grant a youth complete immunity from responsibility for illegal acts (Family Ct Act, art 7). There is nothing in this record which would justify such an exemption in this civil action.
The plaintiff was not a toddler. And building a bomb is not such an inherently innocuous activity that it can reasonably be presumed to be a legally permissible act by an average 15 year old. In fact, despite extensive pretrial proceedings below the plaintiff never claimed that he was ignorant of the fact that his conduct was wrongful or that he was unaware of the potential danger it posed to himself and other members of the public. Thus in this case there is no reason why the plaintiff’s status as a minor should exempt him from the policy which bars a person from seeking legal compensation for injuries directly sustained in the course of willing participation in an illegal act of a serious nature.[3]
Finally the plaintiff urges that the rule precluding such recovery was abrogated when the Legislature adopted *28 CPLR 1411 which provides that the “culpable conduct” of a plaintiff “shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages”. The plaintiff contends that the term “culpable conduct” includes illegal conduct, thus permitting a plaintiff who was injured while violating the law to recover from those who may have contributed to his injury. Since this statute went into effect on September 1,1975 (L 1975, ch 69), prior to the injury sustained by the plaintiff in this case, he urges that it permits him to recover a proportionate share of his loss.
CPLR 1411 abolished the contributory negligence rule which had previously denied a plaintiff any recovery for a cognizable tort if it was shown that the plaintiff had in any way contributed to his own injury. It is a companion to CPLR 1401 which abolished the common-law rules of contribution which often precluded defendants from redistributing liability among themselves based upon the degree to which each of them had contributed to the plaintiff’s injury (see, also, CPLR 1402). This latter statute essentially codified decisions of this court which had rejected the common-law rules on the ground that they depended upon outmoded notions which currently served as arbitrary or artificial obstacles to fair distribution of liability {Dole v Dow Chem. Co., 30 NY2d 143; see, also, Schauer v Joyce, 54 NY2d 1, 5). The history of these statutes shows that by referring to “culpable” conduct, rather than negligence, the Legislature intended to include tortious conduct generally, breaches of warranty and the like which had previously served to defeat otherwise cognizable causes of action for damages, or bar contribution among defendants (McKinney’s Session Laws of NY, 1974, p 1806; McKinney’s Session Laws of NY, 1975, p 1484).
The lower courts properly held that CPLR 1411 has no application to the rule precluding a plaintiff from recovering for injuries sustained as a direct result of his own illegal conduct of a serious nature involving risk of physical harm. That rule is not based on the theory that a plaintiff, with an otherwise cognizable cause of action, *29 cannot recover for an injury to which he has contributed (McKay v Syracuse R. T. Ry. Co., 208 NY 359). It rests, instead, upon the public policy consideration that the courts should not lend assistance to one who seeks compensation under the law for injuries resulting from his own acts when they involve a substantial violation of the law (see, e.g., Riggs v Palmer, supra; Carr v Hoy, supra). It simply means that proof of such an injury would not demonstrate any cause of action cognizable at law. The policy which applies to this case, has always existed independently from the rule of contributory negligence and its successor, comparative negligence. “The difficulties in drawing the line between those breaches of statutory duty which create or defeat a cause of action and those which may be merely a contributing cause of injury must be met as they present themselves” (Corbett v Scott, 243 NY 66, 71, supra).
The policy on which this rule rests has not diminished with time. Nor is there any indication in the history of the statute that the Legislature intended, by eliminating outr moded impediments to otherwise lawful recoveries, to create a new cause of action for those who suffer injuries as a direct result of voluntary participation in acts which the Legislature itself has defined as a serious offense involving risk of physical harm to the public. Thus we find no support for the pendulum theory suggested by the plaintiff and the dissenters, to the effect that the Legislature intended to redress the extreme restrictions of the past by going to opposite extremes in the future.
Accordingly, the order of the Appellate Division should be affirmed.

. Although the dissenters criticize Riggs v Palmer (115 NY 506) as representing an excessively “puritanical” approach to the law, we assume that they would not go so far as to hold that a criminal can profit from his criminal act. It appears that their primary objection is to our recent decision in Reno v D’Javid (42 NY2d 1040) which extended the basic rule so as to prelude a person from obtaining legal compensation for injuries directly resulting from knowing participation in a criminal act. Their criticism of this rule seems to be based on the fact that it does not apply “consistently” to all types of illegal conduct thus permitting a “subjective” judicial evaluation of the degree of the criminality involved. The dissenters do not indicate, however, how this objection, if valid, would be eliminated by adopting the contrary rule they propose. Even the plaintiff recognized that a rapist should not be permitted to obtain legal compensation for injuries negligently sustained as a direct result of the rape, and that in this and similar circumstances the courts would be obliged to place reasonable restrictions on the rule the plaintiff and the dissenters propose that we adopt in this case.

. The fact that the plaintiff engaged in illegal conduct of a serious nature must be emphasized in view of the dissent’s erroneous contention that this decision establishes a novel concept permitting complaints of persons “allegedly guilty of any of the thousands *27 of penal provisions contained in the various statutes of this State” to be dismissed on motion if the court finds that the plaintiff’s conduct contributed to his damages. Neither is there any merit to the dissent’s contention that our decision “will have a substantial impact upon New York’s personal injury litigation” because in “any case in which the plaintiff is allegedly guilty of any of the thousands of penal provisions contained in the various statutes of this State he will be denied access to the civil courts if, after examining the motion papers, a Judge decides the factual questions involved”. As noted above the plaintiff’s own testimony establishes that he was making a bomb and that the injuries for which he now seeks recovery were entirely caused by his attempt to screw the cap on the bomb. Thus the dissent overlooks the unique circumstances of this case by ignoring the fact that the plaintiff’s own admissions prove that he engaged in illegal conduct of a serious nature and that his injuries were directly, indeed solely, caused by his illegal acts.

. This does not mean as the dissent suggests that infancy and other factors which may excuse or ameliorate otherwise criminal conduct can never relieve a plaintiff of the consequences of an apparently criminal act. We simply hold that in this case there has been no showing that the plaintiff’s age entitled him to such relief.