**Rosa GUADAMUD, Plaintiff,**

v.

**DENTSPLY INTERNATIONAL, INC., et alia, Defendants.**

**No. CV–96–5888 (CPS).**

United States District Court, E.D. New York.

Aug. 10, 1998.

Daniel T. Leav, Barton & Zasky, New York City, for Rosa Guadamud.

Kevin J. Brennan, Dwyer & Brennan, New York City, for Dentsply Intern. Inc., L.D., Caulk, Dentsply, Inc., Dentsply Research and Development Corp.

Frederick H. Fern, Lester Schwab Katz & Dwyer, New York City, for Burron Medical, Inc., B. Braun Medical, Inc.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Rosa Guadamud brings this products liability action against Dentsply International, Inc., ("Dentsply International"); Caulk, a Division of Dentsply International; Dentsply, Inc.; Dentsply Research and Development Corp. (collectively, "Dentsply"); Burron Medical, Inc.; and B. Braun Medical, Inc. (together, "Braun"). Plaintiff alleges that Dentsply sold, and Braun manufactured in part, a three-millimeter plastic syringe filled with a phosphoric acid gel for use in cleaning teeth, that the syringe was defective, and that as a result of the defect she was injured by the syringe's contents. Presently before the court are defendants' motions for summary judgment. For the reasons set forth below, the motions are granted.

## BACKGROUND

The following facts are taken from the pleadings and the parties' papers in connection with the instant motion and are undisputed except where noted.

Rosa Guadamud was born in Ecuador in 1961, although at all times relevant to the instant action she was and remains a resident of New York for diversity of citizenship purposes. After graduating high school in Guayaquil, Ecuador in 1979, she entered the dental school of the University of Guayaquil in 1980. She attended a five-year, full-time program in dentistry, studying anatomy, chemistry, physiology, and the other courses required for a degree in general dentistry, which she obtained. She then worked for the Ecuadorian government for a year and then received her certificate from the Colegio de Odontologos del Guyas, which she testified at her deposition is the equivalent of the American Dental Association. This certificate, she testified, constitutes a license to practice dentistry in Ecuador. After receiving her certificate, plaintiff opened a general dentistry practice in Guayaquil.

In June of 1986, plaintiff came to the United States. She attended seminars run by Suffolk Community College on various aspects of radiology and dentistry and took a course at New York University to prepare for the nationally standardized Test of English as a Foreign Language ("TOEFL"). In 1987 plaintiff received her green card as a resident alien. At approximately that time she began to work for a company named Summit Dental as a dental assistant, working for Doctors Signh and Bhinda. In late 1988

plaintiff left Summit Dental after injuries she sustained in a car accident rendered her temporarily disabled. After recovering she began working as a dental assistant in the office of Doctor Bedell, where she remained for three years. In this capacity she assisted with tooth cleaning, extractions, and X-rays.

In 1990, after leaving Dr. Bedell's office, plaintiff attempted to enroll at the New York University School of Dentistry but was not permitted to do so. In order to enroll in the course of dentistry she wished to take, she was required to pass the first part of the National Board Examination in Dentistry. In 1991, plaintiff failed this examination.

In 1993 plaintiff set up her own dentistry practice at 179 Strong Street, Brentwood, New York. The parties do not dispute that plaintiff had not then, and has not to date, obtained a license to practice dentistry in New York State or anywhere else in the United States. Ultimately, in 1995 plaintiff was charged with practicing dentistry without a license and entered a plea of guilty in state court. She was sentenced to three years' probation.

On April 8, 1994, while plaintiff was engaged in the practice of dentistry without a license, she used the Dentsply Tooth Conditioner Gel,[1] ("the product" or "the syringe"), a syringe containing phosphoric acid that is used to prepare teeth for drilling and cavity repair. The product is dispensed only to licensed dentists, for use by licensed dentists or under the supervision of a person so licensed. It is to be used with protective eyewear and clothing.

Plaintiff testified that she was trained in the use of caustic cleansing agents and in the need for eye and skin protection when using such agents. It is undisputed that plaintiff used the product without protective equipment. Plaintiff alleges that the product exploded in her hands, causing her severe injury. She brought the instant action alleging

various product liability, defect, and failure to warn theories.

## DISCUSSION

This court has jurisdiction under 28 U.S.C. § 1332. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the conduct giving rise to the action occurred here.

Federal Rule of Civil Procedure 56(c) provides that summary judgment must be granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of demonstrating the absence of any disputed material facts, and the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

The showing needed on summary judgment reflects the burden of proof in the underlying action. The court must consider "the actual quantum and quality of proof" demanded by the underlying cause of action and must consider which party must present such proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where the ultimate burden of proof is on the nonmoving party, the moving party meets his initial burden for summary judgment by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To survive the motion, the nonmoving party must then "make a showing sufficient to establish the existence of [the challenged] element essential to [that party's] case." *Id.* at 322, 106 S.Ct. 2548. While the court views the evidence in the light most favorable to the nonmoving party, *see O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir.1991),

---

1. In her complaint, plaintiff alleges that the Dentsply Tooth Conditioner Gel is a product sold by defendant Dentsply and manufactured in part by defendant Braun. In its answer, Braun appears to contest either that it manufactures part of the product or the manner in which its manufacture is described in the complaint; having

adopted the practice of categorically denying all allegations in a paragraph "except for" all of the allegations in that paragraph, Braun obscures the meaning of many of its denials. In all events, however, the instant motion does not turn on whether Braun manufactured part of the device.

"the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Rather, summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Before turning to the substance of defendants' motions, I pause to note what is *not* currently before the court. For purposes of this motion defendants concede that their product was defective. Accordingly, plaintiff's statement that there is a dispute as to the material fact of the product's defectiveness is inaccurate. Her recitation of the various other lawsuits and regulatory actions in which the product has been alleged to be defective is irrelevant. The defect of the product is indeed material and may well be disputed if this motion is not granted, but the dispute is not germane to the instant motion.

Defendants' contention is that under the substantive law of New York plaintiff cannot recover in tort for the injuries she sustained while herself violating the law. Federal courts sitting in diversity cases apply the substantive law that would be applied by the courts of the state in which the federal court is located. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir.1997). Plaintiff, a New York resident, was injured in New York, and concedes that New York law applies. Defendants concur and in fact rely on a peculiarity of New York law to sustain their motions.

Under New York law, a person cannot recover in tort for injuries sustained while voluntarily engaging in an illegal act, if the infraction is a "serious violation" of the law and if the injuries are a direct result of the violation. *See Barker v. Kallash,* 63 N.Y.2d 19, 25, 479 N.Y.S.2d 201, 203, 468 N.E.2d 39, 41 (1984) ("[W]hen the plaintiff's injury is a direct result of his knowing and intentional participation in a criminal act he cannot seek compensation for the loss, if the criminal act is judged to be so serious an offense as to warrant denial of recovery.") In *Barker* the court differentiated "lawful activities regulated by statute," wherein the violation of the statute is merely evidence of negligence, from "activities which are entirely prohibited by law," the commission of which can bar recovery for injuries sustained during the illegal activity, *id.,* 479 N.Y.S.2d at 203, 468 N.E.2d 39, and affirmed the grant of summary judgment in favor of defendant seller of firecrackers where plaintiff was injured while using the firecrackers to build a pipe bomb. *Id.* at 206, 468 N.E.2d 39. Under this doctrine, New York courts have denied recovery where a plaintiff alleged medical malpractice arising out of injuries sustained during the performance of a voluntary but illegal abortion, *see Symone T. v. Lieber,* 205 A.D.2d 609, 613 N.Y.S.2d 404 (2d Dept.1994); stole a state-owned vehicle and drove it into a tree while intoxicated, *see Phifer v. New York,* 204 A.D.2d 612, 612 N.Y.S.2d 225 (2d Dept.1994); escaped from police custody and, while fleeing, froze to death in a stream, *Johnson v. State,* 174 Misc.2d 193, 663 N.Y.S.2d 790 (Ct.Cl.1997); and rode atop a moving elevator after climbing through the elevator's escape hatch, *Tillmon v. New York City Housing Auth.,* 203 A.D.2d 19, 609 N.Y.S.2d 239 (1st Dept.1994). Most recently, the New York State Court of Appeals unanimously affirmed the grant of summary judgment to defendants under the *Barker* doctrine where plaintiff, while joyriding in defendants' stolen car, drove into a pole. *Manning v. Brown,* 91 N.Y.2d 116, 122, 667 N.Y.S.2d 336, 339, 689 N.E.2d 1382 (1997). In contrast, applying the *Barker* test Magistrate Judge Levy of this court permitted plaintiff's suit for damages where plaintiff, an illegal alien, was working off-the-books as an auto mechanic when a car that he was repairing fell on top of him. Magistrate Judge Levy held that plaintiff's illegal employment was not a proximate cause of his injury, *Mischalski v. Ford Motor Co.,* 935 F.Supp. 203, 206 (E.D.N.Y.1996), and that working illegally was not a serious violation of the law within the meaning of *Barker. See Mischalski,* 935 F.Supp. at 207.

This case falls within the rule of *Barker*, and plaintiff cannot recover for her injuries. As an initial matter, *Barker* differentiates between "regulatory" and "prohibitory" statutes. The law banning the unlicensed practice of dentistry is prohibitory: it forbids those without a license from acting as dentists. It is of no consequence that other people *can* act as dentists; people with licenses and without alcohol in their blood can drive cars, elevator repairmen may ride atop elevator cars, and, in fact, certain members of the military or police might well be permitted to make pipe bombs. A regulatory statute in this context is one that, for example, required licensed dentists to attend continuing education classes or to read scholarly journals; violation of such a rule might be evidence of negligence. An outright ban on the practice of dentistry without a license, however, is a "prohibitory" statute whose violation can, if the *Barker* test is satisfied, bar recovery altogether.

The first component of the *Barker* test is whether the plaintiff's conduct constitutes a "serious" violation of the law. New York assigns the registration and licensing of the dental profession to the Department of Education and the Board of Regents and has codified the statutes governing professional conduct in the Education Law. Article 130 of that law provides stringent licensing requirements, penalties for misconduct by licensed professionals, and procedures for the institution of penalties against licensees who act improperly. For those individuals who are not licensed at all, the penalty is severe, as Section 6512 of the Education Law makes the unlicensed practice of a regulated profession, herein dentistry, a Class E felony.[2] Under Section 70 of the Penal Law, a Class E felony can result in a maximum sentence of four years.[3] I am unpersuaded by plaintiff's assertion that her violation was not serious because the only obstacle to her becoming a dentist is her lack of citizenship. This is plainly untrue; plaintiff failed the first part of the National Board Examination in dentistry. Far from a technicality, the statutory violation here is quite serious—unqualified by American standards, plaintiff held herself out as a licensed professional and set out to treat patients, endangering them and herself in the process. Plaintiff's reliance on Judge Levy's opinion in *Mischalski* is misplaced both because that case turned on proximate cause as well as the severity of the violation and because the proposition that working off-the-books is not a serious violation, while self-evident, is irrelevant here.

I turn to the question of causation. In *Manning* the New York Court of Appeals held that this aspect of the *Barker* test was satisfied because plaintiff's injuries were "the direct result of her knowing participation in joyriding" and because "[t]he accident occurred" when "plaintiff's accomplice . . . took her eyes off the road to readjust the car radio at plaintiff's suggestion." 667 N.Y.S.2d at 339, 689 N.E.2d 1382. In this case, plaintiff contends that her injury is the "direct result" of the product's being defective. Plaintiff, however, should never have been using the product, as she was neither a dentist nor acting under the supervision of a dentist. Her injury is the direct result of her using the product to treat patients, an activity expressly forbidden to her by the State of New York.

■ Accordingly, because plaintiff committed a serious violation of New York law that directly resulted in the injury for which she now seeks redress, defendants are entitled to summary judgment under New York law.

SO ORDERED.

---

2. New York has criminalized the unlicensed practice of dentistry for nearly a century. *See, e.g., People v. Griswold*, 213 N.Y. 92, 106 N.E. 929 (1914) (affirming conviction for unlicensed practice of dentistry); *People v. Stein*, 112 A.D. 896, 97 N.Y.S. 923 (1st Dept .1906) (same).

3. After pleading guilty to a violation of N.Y. Educ. Law § 6512, plaintiff was sentenced to a term of three years' probation, as permitted by N.Y. Penal Law § 65.00(1)(a).