[687 NYS2d 761]

MARY ANN JOHNSON, Individually and as Administrator of the Estate of TIMOTHY P. JOHNSON, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 89486.)

Third Department, April 8, 1999

## APPEARANCES OF COUNSEL

*Daniel J. Persing,* Albany, for appellant.

*Eliot Spitzer, Attorney-General,* Albany (*Michael S. Buskus* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J. P.

On the evening of March 20, 1993, Timothy P. Johnson (hereinafter decedent) and a companion, Bruce Mann, were traveling in a pickup truck westbound on State Route 23B in the Town of Greenport, Columbia County. While approaching County Route 29 and crossing over a bridge, the vehicle was stopped by State Trooper Frederick Muller because of a non-functioning tail light and a loud exhaust. Decedent, who was driving, pulled the car over to the side of the road on a curve about 100 to 150 yards beyond the bridge, with a portion of his vehicle remaining in the roadway. Muller parked his patrol car behind the truck and approached the driver's window.

While questioning decedent, Muller detected the smell of an alcoholic beverage and noted that decedent's eyes were glassy. As a result, Muller requested that decedent exit the vehicle and stand behind the truck off the roadway. Muller then conducted a series of field sobriety tests, which decedent failed. Decedent was then directed to return to the truck while Muller called in a license and registration check. Muller also called in for an alcosensor test to better ascertain the extent of decedent's intoxication.

Finding that the alcosensor test was not available, Muller decided to arrest decedent for driving while intoxicated on the

basis of his observations of decedent and the results of the field sobriety tests. After ordering decedent to exit the truck and go to the rear of the vehicle, Muller arrested decedent, handcuffed his hands in front of his body and conducted a pat frisk. Muller then placed decedent in the right front passenger seat of the patrol car and secured decedent with a lap belt and shoulder harness, but not in such a way as to secure decedent's arms.* Thereafter, Muller directed his attention to the concern of removing decedent's truck from its dangerous position on the roadway. After determining that Mann did not have a driver's license and had also been drinking, Muller returned to the patrol car and discussed with decedent the options of calling a tow truck or moving the truck further off the road for later retrieval. Following that conversation, Muller returned to the truck and, with decedent's permission, moved it off the road to a safer area.

During the few minutes it took Muller to move the truck, he lost sight of the patrol car. Upon returning to the vehicle, Muller noticed that the passenger door was open and that decedent had escaped. Muller then searched the immediate area surrounding the patrol car, looking to see if decedent was hiding behind the car and searching for any tracks in the snow. Shortly thereafter, the occupants of a passing car informed Muller that they had seen someone running near a bridge about 150 to 200 yards to the east. Muller got into the patrol car, went back to the bridge and searched to see if decedent may have been hiding there. Muller then radioed the Claverack police barracks to report a prisoner escape and called another Trooper for assistance. Thereafter, State Trooper David Serani arrived at the scene, where he and Muller continued to search the area and also called a tow truck to remove the pickup truck. Other Troopers then arrived to continue the search for decedent and Muller was directed to return to the barracks. It was not until July 5, 1993 that decedent's decomposed body was found partially submerged in Claverack Creek about one quarter of a mile from Route 23B. Although an autopsy was conducted, the cause of death was undetermined.

Claimant thereafter commenced this action, alleging the State's negligence in supervising decedent while he was in Muller's custody. A bifurcated trial was held on the issue of liability. In addition to bringing out the essentially uncontested

---

* Although the patrol car's rear doors and windows could not be operated from inside the car, the front doors and windows operated normally.

facts previously stated, claimant presented G. Lawrence Kronau, a retired State Trooper, who testified as to his opinion that Muller did not take proper precautions to prevent decedent's escape. Kronau stressed that, because decedent was intoxicated and despite his apparent cooperativeness, Muller should have had a heightened sense of awareness that decedent's actions would be difficult to anticipate. Kronau opined that Muller should have called for a tow truck and remained with decedent or, in the alternative, Muller should have had decedent wait outside, handcuffed to the post of the car.

On cross-examination, however, Kronau acknowledged that the State Police Field Manual (hereinafter the Manual) provides for an officer to use his or her own judgment and discretion as to whether an individual should be handcuffed. Further, recognizing that decedent was not arrested for a felony and had not acted violently at the time of his arrest, and also that the Manual did not require that a nonfelony, nonviolent arrestee be handcuffed, Kronau agreed that Muller exceeded minimum requirements by handcuffing decedent. In addition, the State presented expert testimony from Sergeant John Penney, the person in charge of physical training and defensive tactics at the State Police Academy, who testified that whether and how to handcuff a person taken into custody is a discretionary determination for the police officer. Although Penney opined that it is usually more effective to control a person in custody by handcuffing behind the back, he testified that it is not always necessary to do so.

Based upon the evidence presented, in a well-reasoned decision the Court of Claims found that the State was not liable for decedent's death because (1) his escape from the patrol car, and ultimate injury, were not foreseeable, and (2) such escape, which was the direct cause of decedent's death, precluded recovery as a matter of public policy. Consequently, the Court of Claims dismissed the claim against the State. Claimant now appeals and we affirm.

■ Initially, we reject the contention that Muller failed to take adequate precautions to prevent decedent's escape. Once a police officer arrests an intoxicated driver, that officer has a duty to exercise the degree of care necessary under the circumstances to assure the safety of a person in that condition (*see, Thomas v State of New York*, 46 NY2d 1043, 1044; *Parvi v City of Kingston*, 41 NY2d 553, 559). As such, it cannot be disputed that, following the arrest, Muller owed a duty of care to

decedent (*see, id.*). Whether there was a breach of that duty turns on the question of whether the resulting injury to decedent was a reasonably foreseeable consequence of the State's conduct (*see, Gordon v City of New York*, 70 NY2d 839, 841; *Danielenko v Kinney Rent A Car*, 57 NY2d 198, 204). In other words, " '[i]f [Muller] could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and [therefore] no liability' " (*Danielenko v Kinney Rent A Car, supra*, at 204, quoting Prosser, Torts, § 43, at 250 [4th ed]; *see, Moore v City of Troy*, 179 AD2d 842, 843, *lv denied* 79 NY2d 758).

Notably, Muller testified that decedent was cooperative and compliant during the arrest, neither making threats of violence nor showing signs of resistance. Muller further testified that decedent had no difficulty understanding his questions or responding to them. Also, when left alone in the police car just following his arrest, decedent appeared to have made no effort to abscond. Decedent, having exhibited no incoherent or irrational behavior as a result of his intoxication, appeared to have posed no risk of flight.

Although claimant contends that greater precautions should have been taken to protect decedent's safety and welfare, given decedent's nonviolent and cooperative demeanor, the record supports a finding that Muller was entitled to exercise his own discretion as to whether to handcuff decedent and, if so, the method of handcuffing him. Likewise, Muller's decision to place decedent in the front passenger seat of the patrol car was consistent with the Manual's guidelines, which instruct Troopers to seat a person in custody in the front of the vehicle when transporting such person alone. Therefore, the record establishes that Muller's conduct did not violate any mandatory, nondiscretionary rules contained in the Manual and that Muller acted reasonably in handcuffing decedent's hands in front of his body and placing him in the front seat of his patrol car, secured with a lap belt and shoulder harness (*see, Moore v City of Troy, supra*, at 843-844). We therefore conclude that Muller's actions were reasonable and that adequate precautions were taken to guard against any reasonably foreseeable dangers (*see, Gordon v City of New York, supra*, at 841).

■ We also agree with the Court of Claims' conclusion that decedent's escape from custody, in violation of Penal Law § 205.05, precludes any recovery as a matter of public policy. "[W]hen [a party] has engaged in activities prohibited, as op-

posed to [those activities] merely regulated, by law, the courts will not entertain the suit if the [party's] conduct constituted a serious violation of the law and the injuries for which he [or she] seeks recovery were the direct result of that violation" (*Barker v Kallash*, 63 NY2d 19, 24). As such, while "[a claim] should not be dismissed merely because the [claimant's] injuries were occasioned by a criminal act" (*id.*, at 25), where the claimant's injuries "[were] the direct result of his [or her] commission of what is judged to be serious criminal or illegal conduct", the claimant is precluded from recovery (*id.*, at 26; *see, La Page v Smith*, 166 AD2d 831, 833, *lv denied* 78 NY2d 855). Such rule is grounded in the public policy that generally denies judicial relief to those parties injured in the course of committing a serious criminal offense (*see, Barker v Kallash, supra*, at 24). Thus, it must be determined whether decedent's death was the result of his commission of a crime and, if so, whether that crime constitutes a sufficiently serious offense that public policy would preclude any recovery (*see, Manning v Brown*, 91 NY2d 116, 121).

In this case, by absconding from police custody after being arrested for driving while intoxicated, decedent committed the crime of escape in the third degree in violation of Penal Law § 205.05. Despite claimant's contentions to the contrary, it appears that decedent's death was the result of his escape from police custody and would not have occurred if decedent did not commit the crime of escape in the third degree (*see, Manning v Brown, supra*, at 121). Although decedent was intoxicated, the trial evidence supports a finding that decedent was not so drunk or incoherent as to lack rational thought. Therefore, his escape appears to have been a volitional act, separate and apart from any alleged negligence on the part of the State. Thus, the escape is found to have been the cause of decedent's death.

Likewise, it cannot be reasonably disputed that decedent's escape constituted a serious violation of the law. Although escape in the third degree is a class A misdemeanor (*see*, Penal Law § 205.05), decedent's conduct cannot be characterized as a minor dereliction (*see, Manning v Brown, supra*, at 121-122; *Barker v Kallash, supra*, at 26). By escaping from police custody, decedent engaged in a hazardous activity that posed a risk not only to himself (the activity in fact caused his death), but to the public as well (*see, Manning v Brown, supra*, at 122; *Flegenheimer v Brogan*, 284 NY 268, 272-273). Therefore, we conclude that decedent committed such a serious violation of

the law as to preclude any recovery for injuries resulting from such violation (*see, Manning v Brown, supra*, at 122; *Flegenheimer v Brogan, supra*, at 273; *La Page v Smith, supra*, at 833).

As a final matter, based upon our conclusion that decedent's escape from custody precludes any recovery as a matter of public policy, we need not consider whether the Court of Claims abused its discretion in limiting claimant's inquiry into records of a disciplinary proceeding based upon Muller's alleged negligence in properly safeguarding decedent. Were we to reach the issue, we would in any event find claimant's argument to be unavailing.

PETERS, SPAIN, CARPINELLO and GRAFFEO, JJ., concur.

Ordered that the judgment is affirmed, without costs.