Rosenblatt, J.
(dissenting). I would apply the doctrine of Barker v Kallash (63 NY2d 19 [1984]) and Manning v Brown (91 NY2d 116 [1997]), and preclude plaintiffs suit.
In Barker, the plaintiff sought damages against defendants who gave him gunpowder to make a pipe bomb. As he was making the bomb, the plaintiff screwed a cap onto the pipe, causing an explosion that severely injured his hands. Even though the defendants contributed to the injury by supplying the gunpowder, this Court barred the plaintiffs suit on public-policy grounds (Barker, 63 NY2d, at 23-26, 28). Barker contended then, as plaintiff does here, that CPLR article 14-A comparative fault concepts should apply, and that fault should be apportioned between the parties (see, id., at 33-34 [Simons, J., dissenting]). The Court disagreed and precluded the *289 plaintiffs suit because plaintiffs wrong — making a pipe bomb— constituted a serious violation of law that transcended contributory negligence and comparative fault (see, id., at 28-29).
Similarly, in Manning, the Court barred the plaintiff from recovering damages against the negligent driver with whom she had been joyriding. The Court concluded that Manning’s conduct — knowingly participating in the unauthorized use of a motor vehicle — was a “serious violation of the law” (91 NY2d, at 122), and precluded her suit against her accomplice driver even though the driver negligently caused the accident and the plaintiffs injuries. Citing Barker, the Court barred the suit because the public policy of this State generally denies judicial relief to those injured in the course of committing a serious criminal act (see, Manning, at 120-121).
The goal of the preclusion doctrine is that plaintiffs — as seekers of damages — should not be allowed to profit from their own criminal acts (cf., e.g., Riggs v Palmer, 115 NY 506, 511-512 [1889]). To that end, the Barker-Manning rule precludes a claim “at the very threshold of the plaintiffs application for judicial relief’ (Manning, 91 NY2d, at 120, citing Barker, 63 NY2d, at 26), before a court can inquire as to the defendant’s culpability. Indeed, the Barker-Manning rule recognizes that by breaching a duty, a defendant caused or contributed to the precluded plaintiffs injuries. Surely the defendants in those two cases were at fault: the Barker defendants had given the plaintiff gunpowder to build a bomb, and Manning’s accomplice drove into a pole and pleaded guilty to stealing the vehicle. But while these defendants breached duties they owed to the plaintiffs and contributed to the plaintiffs’ injuries, this Court still barred the suits rather than apply comparative negligence principles. We reasoned that the policy rationale of preclusion “has always existed independently from the rule of contributory negligence and its successor, comparative negligence” (Barker, 63 NY2d, at 29).
The majority now limits the Barker-Manning doctrine to cases that fall within either of two narrow categories: (1) those in which the parties to the suit were involved in the underlying criminal conduct, or (2) those in which the criminal plaintiff seeks to impose a duty “arising out of’ an illegal act (majority op, at 287). This latter categorization imposes a vexing limitation on the preclusion doctrine and is inconsistent with Barker and Manning. Indeed, it undermines the thrust of those cases.
In Barker, we stated that preclusion must bar suit against a homeowner by a burglar “who breaks his leg while descending *290 the cellar stairs, due to the failure of the owner to replace a missing step” (Barker, 63 NY2d, at 25-26). I agree with my colleagues that the hypothetical Barker burglar should be barred, but their analysis, if applied, would not preclude that suit.
In Basso v Miller (40 NY2d 233, 241 [1976]), we held that landowners owe everyone on the property (whether lawfully or not) a duty of care to maintain the premises in a reasonably safe condition. That duty has nothing to do with the reason a particular person comes onto the property. Thus, the duty owed to the Barker burglar does not “arise out of’ the burglar’s illegal act, but exists independent of it. Despite Basso’s express recognition of a landowner’s duty to a lawbreaker, the Court went out of its way in Barker (eight years after Basso) to emphasize that any breach of the property owner’s duty to maintain the premises could never justify a suit by a burglar injured on the landowner’s defective staircase.
Under the majority’s unwarranted contraction of the preclusion doctrine, suits prosecuted by plaintiffs injured as a result of their own serious violations of law may now more easily avoid dismissal. A plaintiff who commits a serious violation of law and sues for damages need only invoke a duty on the part of the defendant that does not “arise out of’ the illegality (for example, the landowner’s duty to keep the premises safe for everyone). That duty is thus converted into a defense against preclusion. As a result, despite the express prohibition of Barker and the majority’s reaffirmation that the hypothetical burglar cannot sue, today’s opinion validates a contrary result.
Moreover, the Court’s analysis overlooks the premise that preclusion has always considered only the conduct of the plaintiff — the seeker of damages — not the conduct of the defendant. When invoking the preclusion doctrine, we bar suit “at the very threshold of the plaintiffs application for judicial relief’ (Manning, 91 NY2d, at 120, citing Barker, 63 NY2d, at 26) — before the plaintiff can ever argue the nature of the defendant’s duty or when it “arises.” In both Barker and Manning we precluded the suits only because of the plaintiffs’ seriously unlawful conduct, and in spite of the defendants’ acknowledged breach of their legal duties.[1] By inquiring into *291 the nature and origin of the defendant’s duty, the majority debilitates the preclusion doctrine itself.
The majority’s rationale therefore invites people injured as a result of their own seriously unlawful acts to blame others aind recover damages previously prohibited under Barker and Manning. That invitation confounds this Court’s preclusion jurisprudence, which courts had readily understood and followed.* [2] Under today’s analysis, unless a defendant was complicit in a plaintiffs criminal act, a court cannot preclude suit without first concluding that the alleged duty arose out of that illegal act. However, the majority offers no theory explaining when a duty “arises out of’ illegal conduct — an inquiry that is, in any event, fundamentally inconsistent with the policy of preclusion. In short, the majority obliges lower courts to apply an internally inconsistent theory and answer arcane questions with no effective guidance.
In the case before us, plaintiffs suit should be dismissed because it fits the Barker-Manning rule and in some ways makes an even stronger case for preclusion. This is so for two reasons. First, while Manning did not cause her accident in any but the remotest sense, decedent undeniably caused his collision. Although Manning was complicit in the crime of joyriding and had taken a turn at the wheel, her accomplice drove the car into a pole, resulting in Manning’s injuries. Here, however, decedent’s drunk driving was the sole cause of his accident. If Manning (a passenger not directly responsible for her accident) was precluded, then surely plaintiff should be precluded where decedent’s intoxicated driving was the sole cause of his collision.
*292 Second, the hazards posed by drunk drivers are at least as great as those posed by joyriders. In concluding that joyriding is precisely the “serious violation of the law” that Barker contemplated, we noted in Manning that automobiles are “inherently dangerous” instruments and that joyriding “is typically characterized by more than mere unauthorized use. The unauthorized use is usually accompanied by reckless or excessively fast driving, posing a threat to innocent third parties” (Manning, 91 NY2d, at 121-122). Drunk driving deserves at least comparable treatment.[3]
Plaintiff seeks to distinguish between the accident and decedent’s injuries, asking us (under CPLR article 14-A) to allow a jury to apportion fault between decedent and Volkswagen for enhanced injuries resulting from Volkswagen’s alleged failure to design a crashworthy car. Put differently, plaintiff seeks compensation only for the difference between decedent’s actual injuries and those he claims he would have received had he not been driving a vehicle plaintiff alleges was improperly designed. While not without appeal, this argument is ultimately flawed.
We have stated that a plaintiff’s conduct need not be the sole cause of injury for public policy to bar the suit. Rather, we held in language particularly apt here that “[a] plaintiff will be precluded from seeking compensation where his injuries were a [as opposed to the\ direct result of a serious violation of the law” (Barker, 63 NY2d, at 26 [emphasis added]). This distinction involves a good deal more than semantics. It contemplates that comparative negligence principles do not apply in the preclusion context (see, id., at 28-29), and further, that the nature and origin of a defendant’s duty is utterly irrelevant to the issue of whether the public policy of this State precludes a suit.
Here, decedent’s accident resulted solely from his intoxicated driving. Moreover, his enhanced injuries were undisputedly a direct result of his drunk driving. That being so, the enhanced-injury claim should be barred under Barker.
Humphrey v State of New York (60 NY2d 742 [1983]) does not help plaintiff. The Humphrey Court did not confront or even consider the preclusion doctrine. The State did not argue *293 that Humphrey’s decedent’s conduct had been criminal or that his conduct should preclude her suit. Humphrey does not stand for the proposition that drunk driving is outside the scope of Barker-Manning preclusion or is anything but a serious violation of the law.
Although cited in both Barker and Manning,[4] Humphrey is distinguishable from the case before us. As the majority notes,
“In Humphrey the decedent’s criminal act, intoxicated driving, was not the only cause of his accident. It occasioned the event. His reflexes were slowed, his judgment impaired, which combined with the State’s negligent signing of the roadway and construction of a barrier, caused his death” (majority op, at 286).
In Humphrey, “the State’s negligence contributed to decedent’s fatal accident. Liability was assigned 60% to the State and 40% to decedent” (60 NY2d, at 743). Contrastingly, on the facts before us, there can be no apportionment of blame for the accident. The blame is entirely decedent’s. Even if the alleged defect had contributed to the crash (it did not), plaintiff would still face the insurmountable language of Barker that precludes
*294 suit where a plaintiffs serious violation of law is a direct cause of the injury. Thus, it is unavailing that an alleged design defect might also have been a direct cause of injury, and Humphrey cannot help plaintiff.
In sum, decedent’s drunk driving was the sole cause of his accident and a direct cause of his injuries. Accordingly, the Barker-Manning rule cannot abide plaintiffs suit. For the foregoing reasons, I would affirm the order of the Appellate Division.
Chief Judge Kaye and Judges Smith, Levine, Ciparick and Graffeo concur with Judge Wesley; Judge Rosenblatt dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. Contrary to the majority’s assertion, precluding this suit would not relieve Volkswagen of its obligation to manufacture safe cars (see, majority op, at 288). If a car manufacturer breaches its duty to design a safe automobile, that duty is (and should be) eminently enforceable by the universe of deserving plaintiffs. This Court did not “relieve” Manning and Barker of their re *291 spective duties to drive safely or refrain from helping to make a bomb. Preclusion operates not to extinguish a duty, but to prohibit a particular criminal plaintiff (or here, decedent’s estate) from profiting by enforcing that duty.

. For example, in Johnson v State of New York (253 AD2d 274 [1999]), a State Trooper arrested the plaintiffs decedent but allegedly failed to guard him adequately. The decedent escaped and died. The Court held that the State had satisfied its duty of care to guard the decedent, and in any event, the escape was a serious criminal act warranting preclusion under Barker. In Johnson, as with the Barker burglar, the duty preceded the criminal act. It is difficult to see how this and other entirely proper applications of Barker and Manning can survive the majority’s analysis (see, e.g., Phifer v State of New York, 204 AD2d 612, 613 [1994] [precluding suit by an intoxicated car thief alleging that the State breached its duty not to leave keys in the car]; Guadamud v Dentsply Intl., 20 F Supp 2d 433, 436-437 [ED NY 1998] [precluding products liability suit under Barker where the plaintiff unlicensed dentist was injured when equipment exploded in her hands]).

. According to the record, decedent’s blood alcohol content was between 0.17 and 0.22%. Although we cannot say with precision what decedent’s blood alcohol content was at the time of the accident, he was undeniably very drunk, approximately double the 0.10% limit of Vehicle and Traffic Law 1192 (2).

. The propositions for which we cited Humphrey in Barker and Manning do not support plaintiff. In Barker, we stated that
“[a] complaint should not be dismissed merely because the plaintiff’s injuries were occasioned by a criminal act (cf. Humphrey v State of New York, 60 NY2d 742, 744 * * *)” (Barker, 63 NY2d, at 25 [emphasis added]).
Humphrey did not deal with preclusion. It articulated basic tort principles under which the “mere” fact of a plaintiff’s criminal conduct does not prevent the plaintiff from recovering. Here, plaintiff’s suit should be barred not because decedent’s injuries were “merely” occasioned by a criminal act, but because decedent’s “serious violation of the law” (Barker, 63 NY2d, at 24 [emphasis added]) was the sole cause of his accident and a direct cause of his injuries.
In Manning, we observed that the plaintiff
“[sought] redress in connection with the very conduct that constitutes a violation of the law. Her injuries were the direct result of her knowing participation in joyriding (see, Barker v Kallash, supra, 63 NY2d, at 25, 32; cf., Humphrey v State of New York, 60 NY2d 742, 744)” (Manning, 91 NY2d, at 121).
In that passage, we compared Manning’s conduct with Humphrey’s decedent’s conduct, and pointed out that Humphrey could maintain a cause of action even though there were other causes of the accident. In the case before us, however, decedent was solely responsible for his accident.
Thus, there is nothing in the Barker or Manning Court’s “cf.” citations to Humphrey, and nothing in Humphrey itself, that aids plaintiff here.