OPINION OF THE COURT
Phillip R. Rumsey, J.
Plaintiff commenced this action seeking to recover for injuries that he sustained in a motor vehicle accident which occurred at approximately 10:40 p.m. on July 5, 2008 — a few days prior to his twentieth birthday — on Cold Brook Road in the Town of Scott. Prior to the accident, plaintiff and defendants had attended a Fourth of July party at the Clark residence on Cold Brook Road. The parties left in three vehicles. Plaintiff and Raymond were passengers in the cab of a Chevrolet pickup truck owned by Rotchford and operated by Brian Eastman.[1] Defendant Losaw drove the second vehicle, a 1966 Chrysler owned by *709 Frank Eastman, in which Frank Eastman and Eaton were passengers. The third vehicle was a Honda Accord owned and operated by Rotchford, who had no passengers. Although Rotchford was not originally intended to be a participant, all three vehicles raced south on Cold Brook Road, reaching speeds estimated to be as high as 100 miles per hour. The Chevrolet pickup truck left the road, struck a tree, flipped over, and came to rest on its roof. Plaintiff was ejected and sustained spinal injuries that left him a quadriplegic. Defendants Eaton, Rotchford, Brian Eastman, Frank Eastman, and Raymond (collectively the moving defendants) each answered the complaint and now move for summary judgment dismissing the complaint. Losaw did not answer the complaint or otherwise appear in the action. Plaintiff moves for (1) a default judgment against Losaw; (2) summary judgment on the issue of negligence against Brian Eastman; (3) an order to compel Rotchford to provide a deposition or, alternatively, to preclude his testimony; and (4) leave to amend his complaint to assert a cause of action against Raymond, pursuant to General Obligations Law § 11-100, to recover for injuries allegedly sustained as a result of her wrongfully providing alcohol to a person under age 21.
Each of the moving defendants, except Frank Eastman, argues that plaintiff is barred from recovery for his injuries because they resulted directly from his willing participation in an illegal activity, namely, a motor vehicle speed contest on a public road, i.e., a drag race. No recovery for injuries is available to a plaintiff whose injuries directly result from his or her participation in conduct constituting a serious violation of the law (see Manning v Brown, 91 NY2d 116, 120 [1997], citing Barker v Kallash, 63 NY2d 19 [1984]). This rule — the Barker/ Manning rule — is based on public policy that denies judicial relief to those injured in the course of committing a serious criminal act, “and it exists independently of, and supersedes, the doctrine of comparative fault” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1411:3 at 98; Manning, 91 NY2d at 120; Barker, 63 NY2d at 24, 27-29). The rule does not bar recovery in every instance where a plaintiff has engaged in conduct prohibited by law; rather, it precludes recovery “only where the plaintiffs injuries ‘were a direct result of a serious violation of the law involving hazardous activities which were not justified under the circumstances’ ” (Manning, 91 NY2d at 121, quoting Barker, 63 NY2d at 26).
Plaintiffs counsel argues that plaintiff was, at most, a passive participant in the race and that there is no evidence *710 that he encouraged the race (see affirmation of Robert Quattrocci, Esq. dated Feb. 4, 2013 [Quattrocci affirmation], 1Í1Í 25-26). Such arguments are belied by plaintiffs own deposition testimony, which demonstrates that he knowingly participated in an illegal act (see Manning, 91 NY2d at 121 [plaintiffs own testimony established her knowing participation, notwithstanding her “weak protestations to the contrary”]). He testified that while he was still at the party at the Clark residence, he participated in a 20-minute conversation with a number of people — including all of the defendants — about whether the Chevrolet pickup operated by Brian or Frank’s 1966 Chrysler car was faster (see Quattrocci affirmation, exhibit H [transcript of examination before trial of Matthew Hathaway; herein plaintiff EBT tr] at 25, 32, 73-75).[2] He noted that the conversation resulted in an agreement to race down Cold Brook Road from its intersection with Craig Road to the house where Brian lived — a distance of two or three miles (id. at 25, 26, 32, 75). He admits that he “vouched” for Brian, by opining that there was no chance of Frank’s vehicle beating Brian’s pickup (id. at 74, 76). He acknowledged that nobody present opposed the idea of a race or observed that a race might injure the participants or others (id. at 75). He knew when he got into the Chevrolet pickup that it would be involved in the race (id. at 32). The three occupants of the pickup were seated in the cab adjacent to each other (id. at 77). Notably, as demonstrated by the following testimony, plaintiff made no effort to stop the race after it began, and, in fact, continued his active participation by successfully encouraging Brian to accelerate:
“Q. After the two vehicles, the pickup you were in and Frank’s car, began moving south down Cold Brook Road was there any further conversation in the pickup truck?
“A. Well, when Frank’s vehicle started to pull ahead of us, I was telling Brian, like, ‘You’re letting him win,’ or whatever I said. ‘He’s beating you’ or *711 something. And at that time Rachel said, ‘Yeah. He’s beating you. If you let him win, you’ll never hear the end of it.’ And that’s when Brian hit the throttle a little more and we started to pass Frank’s car.
“Q. Would it be fair to say that at no point in time as you were racing down the road on Cold Brook did you ever tell Brian to stop the race?
“A. Yeah, I never did.” (Id. at 90.)
Nor is there any doubt that plaintiff’s injuries directly resulted from his participation in the drag race. The Chevy pickup left the road almost immediately after plaintiff had encouraged the driver to accelerate in a final effort to defeat the other vehicle (id. at 89-90 [the accident occurred as the Chevy began to pull ahead of Frank’s car, which happened right after the quoted conversation]; at 25-26 [the accident occurred as the vehicles approached Brian’s house, the agreed-upon finish line]; cf. with Manning, 91 NY2d at 121 [the injuries sustained by the plaintiff passenger were the direct result of her knowing participation in joyriding, and occurred when the driver took her eyes off the road to readjust the radio at plaintiffs suggestion]).
Moreover, the factors considered by the Court of Appeals in Manning in holding that unauthorized use of a motor vehicle by unlicensed drivers constituted a serious violation of the law that precluded the plaintiff passenger from recovery for the injuries that she sustained require the same result in this case (91 NY2d at 121-122). Like unauthorized use of a motor vehicle, aiding or abetting a motor vehicle speed contest on a public highway is a misdemeanor and, therefore, constitutes a crime (cf. Penal Law § 165.05 with Vehicle and Traffic Law § 1182 [1]; see also Penal Law § 10.00 [6]). The Manning Court’s observation that unauthorized driving is usually accompanied by reckless or excessively fast driving is even more applicable to drag racing, the very purpose of which is the sudden acceleration and operation of at least two motor vehicles at high speeds, often side by side without regard for oncoming traffic (see e.g. O’Connor v Kuzmicki, 14 AD3d 498 [2005]; Prough v Olmstead, 210 AD2d 603 [1994]; Policastro v Savarese, 171 AD2d 849 [1991]; Fuscaldo v Jaiman, 12 Misc 3d 1179[A], 2006 NY Slip Op 51317[U] [2006]). Such conduct is an inherently dangerous activity, which exposes the participants and the public at large to the risk of serious injury or death.
The conduct described by plaintiff in this case aptly illustrates the dangers inherent in drag racing. He depicts a race for a
*712 distance of up to two or three miles between two vehicles being driven side by side on a curvy two-lane country road with an uneven surface and potholes at speeds of approximately 100 miles per hour (see plaintiff EBT tr at 24, 26, 27, 33, 34, 88). The resulting accident and plaintiffs own serious, life-altering injuries show the danger to participants, and the fact that the parties did not encounter any innocent third parties during the race in a remote country location (id. at 26) does not excuse the threat that their conduct posed to the general public (see Wolfe v Hatch, 95 AD3d 1394, 1397 [2012] [analysis of threat to general public turns on whether the potential for such harm existed, not whether any innocent third party was actually affected by the conduct at issue]). Thus, plaintiffs own testimony establishes that he knowingly and willingly participated in the illegal act of aiding or abetting the drag race, precluding him from recovery for the injuries that he sustained in the resulting accident.[3]
The determination that plaintiff may not recover for the injuries that he sustained in the accident requires that his motion for a default judgment be denied. To obtain a default judgment, a plaintiff must submit proof of facts that state a viable cause of action (see CPLR 3215 [f]). In this case, plaintiff may not rely on the complaint, as it was verified by his attorney (see Hann v Morrison, 247 AD2d 706, 708 [1998]), and his reliance on the police report (see affirmation of Keith R. Young dated Jan. 24, 2013, 1Í14) is unavailing. The statement made by Lo-saw that is contained in the police report may be considered; however, the remaining contents are hearsay that may not be used to prove the facts necessary to show the existence of a viable claim against him (see Toll v State of New York, 32 AD2d 47, 49-50 [1969] [the statement of a party recorded in a police report is admissible]). Notably, while the Losaw statement contained in the report reflects that he passed Brian Eastman’s vehicle at a high rate of speed while driving Frank Eastman’s *713 car, it contains no proof of one of the necessary elements to plaintiffs cause of action against Losaw, namely, that he agreed to race (see Shea v Kelly, 121 AD2d 620 [1986] [proof that defendant was driving at a high rate of speed and that he had passed another vehicle once was not sufficient to show the existence of an agreement to race]; see also Blakeslee v Wadsworth, 37 AD3d 1021, 1023 [2007] [establishment of concerted action liability requires proof of an agreement to participate in a dangerous activity]).
In addition to the evidence identified by plaintiff in support of his motion for a default judgment, the court may consider other competent proof in the record on the motion (see e.g. McGee v Dunn, 75 AD3d 624, 625 [2010]). Plaintiffs EBT transcript remedies the identified factual defect, because — as previously noted — it shows the existence of an agreement to race among himself and all of the defendants, including Losaw. “The court, however, must still reach the legal conclusion that those factual allegations establish a prima facie case” (Walley v Leatherstocking Healthcare, LLC, 79 AD3d 1236, 1238 [2010]; McGee, 75 AD3d at 624). Inasmuch as the facts submitted by plaintiff show that he is precluded from recovery for his injuries because he participated in conduct constituting a serious violation of the law, he has failed to state a cause of action sufficient to warrant the entry of a default judgment against Losaw. Where, as here, no viable cause of action has been sufficiently stated, the court may sua sponte dismiss a complaint upon a plaintiffs motion for a default judgment (see Aprea v New York State Bd. of Elections, 103 AD3d 1059, 1061 [2013], quoting Walley, 79 AD3d at 1238).
The determination that plaintiff may not recover for his injuries likewise requires denial of his motion seeking summary judgment against Brian Eastman on the issue of negligence,[4] and his motion for leave to amend his complaint to assert a cause of action against Raymond, pursuant to General Obligations Law § 11-100, for personal injuries caused by the intoxication of Brian Eastman — who was then under age 21 — from alcohol unlawfully and knowingly provided to him by Raymond. *714 Even if plaintiff proves the elements of the proposed cause of action, he will be precluded from recovery because the injuries that resulted from Brian Eastman’s intoxication also resulted from plaintiffs participation in conduct constituting a serious violation of the law, which bars him from recovery for those injuries. Accordingly, plaintiffs motion to amend his complaint must be denied because the proposed cause of action lacks merit (see Vollbrecht v Jacobson, 40 AD3d 1243, 1247 [2007]; Taylor v Dyer, 190 AD2d 902 [1993]). Finally, in light of the fact that the determinations made herein dispose of the action, there is no need to compel Rotchford to provide a deposition.
Based on the foregoing:
1. the motions made by the moving defendants are granted, and the complaint is dismissed against each of them, with prejudice;
2. plaintiffs motion seeking a default judgment against Lo-saw is denied, and the complaint is dismissed against Losaw, with prejudice;
3. plaintiffs motion seeking summary judgment on the issue of negligence against Brian Eastman is denied;
4. plaintiff’s motion for an order to compel Rotchford to provide a deposition or, alternatively, to preclude his testimony is denied; and
5. plaintiffs motion for leave to amend his complaint to assert a cause of action against Raymond, pursuant to General Obligations Law § 11-100, is denied.

. Brian Eastman testified that, although the Chevrolet pickup was owned by Rotchford, he possessed and regularly used it prior to the accident. In their respective depositions, the parties regularly referred to the vehicle as belonging to Brian.

. Plaintiffs EBT transcript was attached to, or incorporated by reference in, the papers submitted by each of the moving defendants. (It was included in the moving papers originally submitted by each of the defendants except Brian Eastman. Eastman included [at 24-28] in his moving papers [see aff of David E McCarthy, sworn to Jan. 9, 2013, If 3] and incorporated the entire transcript in reply [see reply aff of David F. McCarthy, sworn to Jan. 29, 2013, 11 2].) Although Frank Eastman’s moving papers do not specifically argue that plaintiff should be precluded from recovery by his participation in the drag race, the necessary facts are contained in plaintiffs EBT transcript, which he submitted in support of his motion.

. It bears noting that plaintiff is precluded from recovery by the same principle on which he relied in seeking to impose liability on the majority of the defendants. Brian Eastman, the driver of the vehicle in which plaintiff was riding, and Rotchford, its owner, may have owed a duty directly to plaintiff. However, inasmuch as there was no contact between the vehicles or allegations of any independent act of negligence by any of the other defendants which contributed to the accident, plaintiff must show their agreement to engage in the drag race in order to impose liability upon them (see Policastro, 171 AD2d at 852-853). Nonetheless, plaintiffs own testimony established not only their agreement to participate in the race, but his own as well.

. Even if plaintiff were not barred from recovery for his injuries, his motion for summary judgment against Brian Eastman would fail, because plaintiff failed to show that he was free from comparative fault (see Calcano v Rodriguez, 91 AD3d 468 [2012]). In fact, he argues that the extent of his comparative negligence is a factual issue which should be decided by a jury (see Quattrocci affirmation HH 26-29).