97 N.Y.2d 281 (2002)
766 N.E.2d 574
739 N.Y.S.2d 867
SHAUNA ALAMI, as Administratrix of the Estate of SILHADI ALAMI, Deceased, Appellant,
v.
VOLKSWAGEN OF AMERICA, INC., Respondent.
Court of Appeals of the State of New York.
Argued January 10, 2002.
Decided February 19, 2002.
*282 Profeta & Eisenstein, New York City (Fred R. Profeta, Jr., of counsel), and Shandell, Blitz, Blitz, Glass, Bookson & Kern, LLP, for appellant.
Herzfeld & Rubin, P. C., New York City (David B. Hamm, Herbert Rubin, Michael Hoenig and Carl Grasso of counsel), for respondent.
*283 Skadden, Arps, Slate, Meagher & Flom LLP, New York City (Sheila L. Birnbaum, Douglas W. Dunham and Byron G. Stier of counsel), for Product Liability Advisory Council, amicus curiae.
Janice Stitziel Bloom, Irving, Texas, for Mothers Against *284 Drunk Driving, amicus curiae.
Chief Judge KAYE and Judges SMITH, LEVINE, CIPARICK and GRAFFEO concur with Judge WESLEY; Judge ROSENBLATT dissents and votes to affirm in a separate opinion.

OPINION OF THE COURT
WESLEY, J.
In the early morning hours of May 10, 1995 Silhadi Alami was driving home alone in his Volkswagen Jetta on the Saw Mill River Parkway in Yonkers. Traveling at approximately 35 miles per hour, the Jetta left an exit ramp and collided with a steel utility pole. Alami died as a result of his injuriesfractures of the ribs, rupture of the liver and massive internal hemorrhaging. At the time of the collision, his blood alcohol content exceeded the limits set forth in Vehicle and Traffic Law § 1192 (2).
Alami's widow commenced this action against Volkswagen of America, Inc. seeking to recover damages on the theory that a defect in the vehicle's design enhanced decedent's injuries. Volkswagen moved for summary judgment arguing that decedent's intoxication was the sole cause of the crash and that no defect or malfunction in the Jetta caused or contributed to it. In light of Alami's intoxication at the time of the accident, Volkswagen also asserted that plaintiff's claim was precluded on public policy grounds. Volkswagen's motion did not address whether plaintiff could sustain her claim that the vehicle was defective.
In opposing the motion, plaintiff submitted an affidavit and report from an expert who had inspected the vehicle, autopsy report, photographs of the scene, police report and crash test results from Volkswagen and the Federal Government. The expert asserted that due to structural deficiencies in the manufacture of the vehicle, its floorboard buckled upward during the collision. He noted that the vehicle did not have adequate subframe reinforcement, and that the resultant buckling caused the decedent to be thrown forward, causing thoracic and abdominal injuries that led to his death. The expert *285 concluded that if the vehicle had a transverse stringer to provide adequate structural support and a three-point combination lap and shoulder harnesssafety features which were readily available and in common use in the automobile industrythe decedent would have survived the crash with minimal injury.
Supreme Court granted Volkswagen's motion. The court applied our holdings in Barker v Kallash (63 NY2d 19) and Manning v Brown (91 NY2d 116) to preclude plaintiff's claim based on its finding that decedent's drunk driving constituted a serious violation of the law and that his injuries were the direct result of that violation. The Appellate Division affirmed, holding only that "the negligent manner in which the decedent was operating his vehicle was the sole proximate cause of the collision and his fatal injuries" (278 AD2d 262). We now reverse.
Volkswagen and amici argue that plaintiff's claim should be precluded on public policy grounds because the decedent was intoxicated at the time of the accident. They point to Barker and Manning, in which we held "that where a plaintiff has engaged in unlawful conduct, the courts will not entertain suit if the plaintiff's conduct constitutes a serious violation of the law and the injuries for which the plaintiff seeks recovery are the direct result of that violation" (Manning, 91 NY2d at 120 [citing Barker, 63 NY2d 19, supra]). When this test is met, recovery is precluded "at the very threshold of the plaintiff's application for judicial relief" (Barker, 63 NY2d at 26).
Operating a motor vehicle while in an intoxicated condition is indisputably a serious violation of the law. "The importance of the governmental interest [in deterring drunk drivers] is beyond question" (People v Scott, 63 NY2d 518, 525). But plaintiff contends that her husband's intoxication was not the direct cause of the injuries for which recovery is sought. Relying on Humphrey v State of New York (60 NY2d 742) and our analysis in Barker and Manning plaintiff contends that, because this action is premised on defects in the vehicle and their role in her husband's death, Barker and Manning do not bar her claim.
In Barker, we noted that "the public policy of this State generally denies judicial relief to those injured in the course of committing a serious criminal act" (63 NY2d at 24, supra [citing Reno v D'Javid, 42 NY2d 1040]). However, in Barker we were careful to note that "[t]he rule denying compensation to the serious offender would not apply in every instance where the plaintiff's injury occurs while he is engaged in illegal activity *286 * * *. A complaint should not be dismissed merely because the plaintiff's injuries were occasioned by a criminal act" (Barker, 63 NY2d at 25 [citing Humphrey, 60 NY2d at 744]).
In Humphrey, the State sought to characterize plaintiff's decedent's intoxicationcomparable to decedent's blood alcohol levels hereas a supervening cause of plaintiff's decedent's motor vehicle accident, thus absolving it of its 60% share of a comparative fault determination. We specifically rejected the State's position noting that "[t]he fact that decedent's ability to drive was impaired does not exonerate the State from liability on the ground that its negligence was not one of the proximate causes of the accident" (Humphrey, 60 NY2d at 744). We recognized in Barker that Humphrey presented a different set of considerations (see, Barker, 63 NY2d at 25). In Humphrey, the decedent's criminal act, intoxicated driving, was not the only cause of his accident. It occasioned the event. His reflexes were slowed, his judgment impaired, which combined with the State's negligent signing of the roadway and construction of a barrier, caused his death.
Plaintiff contends that her complaint presents a similar claim here. Plaintiff does not contest Volkswagen's assertion that Alami's intoxication was the cause of the vehicle's collision with the utility pole. Moreover, plaintiff has not identified any other cause of the crash, as did the plaintiff in Humphrey. She has sued only Volkswagen and argues that her husband's injuries were caused by design defects in the vehicle that rendered it unsafe. Thus, plaintiff asserts that under these circumstances, her claim is not precluded on public policy grounds because the injuries upon which the claim is based do not have the necessary causal link to the decedent's serious violation of the law.
While we might quarrel with the dissent over whether a plaintiff's illegal conduct must be a direct cause (Barker, 63 NY2d at 26) or the direct cause (Manning, 91 NY2d at 120) to raise the bar of preclusion, our conclusion in this case is based on more than semantics. The Barker/Manning rule is premised on public policy. "It extends the basic principle that one may not profit from his own wrong (Riggs v Palmer, 115 NY 506; Carr v Hoy, 2 NY2d 185) to tort actions seeking compensation for injuries resulting from the plaintiff's own criminal activities of a serious nature" (Barker, 63 NY2d at 25). In Riggs, we held that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime" (115 NY at 511, supra).
*287 We first applied this public policy imperative in a tort context in Reno v D'Javid (42 NY2d 1040), where we denied a claim against a doctor for negligence in performing an illegal abortion. In Barker, we precluded the plaintiff's claim against those who had facilitated his construction of a pipe bomb. More recently, in Manning we applied the Riggs maxim to preclude a joyrider from bringing a claim against her fellow miscreant for injuries received during their illicit ride. The Barker/Manning rule is based on the sound premise that a plaintiff cannot rely upon an illegal act or relationship to define the defendant's duty (see, W. Page Keeton et al., Prosser and Keeton, Torts § 36, at 232 [5th ed 1984]). We refuse to extend its application beyond claims where the parties to the suit were involved in the underlying criminal conduct, or where the criminal plaintiff seeks to impose a duty arising out of an illegal act.
If Volkswagen did defectively design the Jetta as asserted by plaintiff's expert, it breached a duty to any driver of a Jetta involved in a crash regardless of the initial cause (see, e.g., Reed v Chrysler Corp., 494 NW2d 224, 230 [Iowa]; Andrews v Harley Davidson, Inc., 106 Nev 533, 537-538, 796 P2d 1092, 1095). Plaintiff does not seek to "profit" from her husband's intoxicationshe asks only that Volkswagen honor its well-recognized duty to produce a product that does not unreasonably enhance or aggravate a user's injuries (see, Bolm v Triumph Corp., 33 NY2d 151, 159; Rainbow v Albert Elia Bldg. Co., 79 AD2d 287, affd 56 NY2d 550). The duty she seeks to impose on Volkswagen originates not from her husband's act, but from Volkswagen's obligation to design, manufacture and market a safe vehicle.[1]
That same reasoning, however, would deny a burglar injured on a defective staircase from asserting a claim against his victim (see, Barker, 63 NY2d at 25-26). Although landowners do have a general duty to the public to maintain their premises in a reasonably safe condition (see, Basso v Miller, 40 NY2d 233), this duty does not exist in the abstract. It takes form when someone enters the premises and is injured. Thus, the injured burglar is not entitled to benefit from his burglary *288 because he cannot invoke a duty triggered by his unlawful entry.
The Barker/Manning rule embodies a narrow application of public policy imperatives under limited circumstances. Extension of the rule here would abrogate legislatively mandated comparative fault analysis in a wide range of tort claims. In essence, the dissent would have this Court extend the Barker/Manning rule to relieve Volkswagen in this case of its duty to manufacture a safe vehicle. This we will not do.
Volkswagen's motion for summary judgment did not dispute the viability of plaintiff's claim for "design defects which enhance or aggravate injuries" (Bolm, 33 NY2d at 158). Indeed, in its submission to Supreme Court in support of its summary judgment motion, defendant noted that "the relative merits of plaintiff's theories are irrelevant" (emphasis added).[2] Thus, the legal sufficiency of her claim and how she will prove it is not before us at this time, except in its most rudimentary pleading status to test the scope of the Barker/Manning rule and its impact on plaintiff's claim.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant's motion for summary judgment dismissing the complaint should be denied.
ROSENBLATT, J. (dissenting).
I would apply the doctrine of Barker v Kallash (63 NY2d 19 [1984]) and Manning v Brown (91 NY2d 116 [1997]), and preclude plaintiff's suit.
In Barker, the plaintiff sought damages against defendants who gave him gunpowder to make a pipe bomb. As he was making the bomb, the plaintiff screwed a cap onto the pipe, causing an explosion that severely injured his hands. Even though the defendants contributed to the injury by supplying the gunpowder, this Court barred the plaintiff's suit on public-policy grounds (Barker, 63 NY2d, at 23-26, 28). Barker contended then, as plaintiff does here, that CPLR article 14-A comparative fault concepts should apply, and that fault should be apportioned between the parties (see, id., at 33-34 [Simons, J., dissenting]). The Court disagreed and precluded the *289 plaintiff's suit because plaintiff's wrongmaking a pipe bomb constituted a serious violation of law that transcended contributory negligence and comparative fault (see, id., at 28-29).
Similarly, in Manning, the Court barred the plaintiff from recovering damages against the negligent driver with whom she had been joyriding. The Court concluded that Manning's conductknowingly participating in the unauthorized use of a motor vehiclewas a "serious violation of the law" (91 NY2d, at 122), and precluded her suit against her accomplice driver even though the driver negligently caused the accident and the plaintiff's injuries. Citing Barker, the Court barred the suit because the public policy of this State generally denies judicial relief to those injured in the course of committing a serious criminal act (see, Manning, at 120-121).
The goal of the preclusion doctrine is that plaintiffsas seekers of damagesshould not be allowed to profit from their own criminal acts (cf., e.g., Riggs v Palmer, 115 NY 506, 511-512 [1889]). To that end, the Barker-Manning rule precludes a claim "at the very threshold of the plaintiff's application for judicial relief" (Manning, 91 NY2d, at 120, citing Barker, 63 NY2d, at 26), before a court can inquire as to the defendant's culpability. Indeed, the Barker-Manning rule recognizes that by breaching a duty, a defendant caused or contributed to the precluded plaintiff's injuries. Surely the defendants in those two cases were at fault: the Barker defendants had given the plaintiff gunpowder to build a bomb, and Manning's accomplice drove into a pole and pleaded guilty to stealing the vehicle. But while these defendants breached duties they owed to the plaintiffs and contributed to the plaintiffs' injuries, this Court still barred the suits rather than apply comparative negligence principles. We reasoned that the policy rationale of preclusion "has always existed independently from the rule of contributory negligence and its successor, comparative negligence" (Barker, 63 NY2d, at 29).
The majority now limits the Barker-Manning doctrine to cases that fall within either of two narrow categories: (1) those in which the parties to the suit were involved in the underlying criminal conduct, or (2) those in which the criminal plaintiff seeks to impose a duty "arising out of" an illegal act (majority op, at 287). This latter categorization imposes a vexing limitation on the preclusion doctrine and is inconsistent with Barker and Manning. Indeed, it undermines the thrust of those cases.
In Barker, we stated that preclusion must bar suit against a homeowner by a burglar "who breaks his leg while descending *290 the cellar stairs, due to the failure of the owner to replace a missing step" (Barker, 63 NY2d, at 25-26). I agree with my colleagues that the hypothetical Barker burglar should be barred, but their analysis, if applied, would not preclude that suit.
In Basso v Miller (40 NY2d 233, 241 [1976]), we held that landowners owe everyone on the property (whether lawfully or not) a duty of care to maintain the premises in a reasonably safe condition. That duty has nothing to do with the reason a particular person comes onto the property. Thus, the duty owed to the Barker burglar does not "arise out of" the burglar's illegal act, but exists independent of it. Despite Basso's express recognition of a landowner's duty to a lawbreaker, the Court went out of its way in Barker (eight years after Basso) to emphasize that any breach of the property owner's duty to maintain the premises could never justify a suit by a burglar injured on the landowner's defective staircase.
Under the majority's unwarranted contraction of the preclusion doctrine, suits prosecuted by plaintiffs injured as a result of their own serious violations of law may now more easily avoid dismissal. A plaintiff who commits a serious violation of law and sues for damages need only invoke a duty on the part of the defendant that does not "arise out of" the illegality (for example, the landowner's duty to keep the premises safe for everyone). That duty is thus converted into a defense against preclusion. As a result, despite the express prohibition of Barker and the majority's reaffirmation that the hypothetical burglar cannot sue, today's opinion validates a contrary result.
Moreover, the Court's analysis overlooks the premise that preclusion has always considered only the conduct of the plaintiffthe seeker of damagesnot the conduct of the defendant. When invoking the preclusion doctrine, we bar suit "at the very threshold of the plaintiff's application for judicial relief" (Manning, 91 NY2d, at 120, citing Barker, 63 NY2d, at 26)before the plaintiff can ever argue the nature of the defendant's duty or when it "arises." In both Barker and Manning we precluded the suits only because of the plaintiffs' seriously unlawful conduct, and in spite of the defendants' acknowledged breach of their legal duties.[1] By inquiring into *291 the nature and origin of the defendant's duty, the majority debilitates the preclusion doctrine itself.
The majority's rationale therefore invites people injured as a result of their own seriously unlawful acts to blame others and recover damages previously prohibited under Barker and Manning. That invitation confounds this Court's preclusion jurisprudence, which courts had readily understood and followed.[2] Under today's analysis, unless a defendant was complicit in a plaintiff's criminal act, a court cannot preclude suit without first concluding that the alleged duty arose out of that illegal act. However, the majority offers no theory explaining when a duty "arises out of" illegal conductan inquiry that is, in any event, fundamentally inconsistent with the policy of preclusion. In short, the majority obliges lower courts to apply an internally inconsistent theory and answer arcane questions with no effective guidance.
In the case before us, plaintiff's suit should be dismissed because it fits the Barker-Manning rule and in some ways makes an even stronger case for preclusion. This is so for two reasons. First, while Manning did not cause her accident in any but the remotest sense, decedent undeniably caused his collision. Although Manning was complicit in the crime of joyriding and had taken a turn at the wheel, her accomplice drove the car into a pole, resulting in Manning's injuries. Here, however, decedent's drunk driving was the sole cause of his accident. If Manning (a passenger not directly responsible for her accident) was precluded, then surely plaintiff should be precluded where decedent's intoxicated driving was the sole cause of his collision.
*292 Second, the hazards posed by drunk drivers are at least as great as those posed by joyriders. In concluding that joyriding is precisely the "serious violation of the law" that Barker contemplated, we noted in Manning that automobiles are "inherently dangerous" instruments and that joyriding "is typically characterized by more than mere unauthorized use. The unauthorized use is usually accompanied by reckless or excessively fast driving, posing a threat to innocent third parties" (Manning, 91 NY2d, at 121-122). Drunk driving deserves at least comparable treatment.[3]
Plaintiff seeks to distinguish between the accident and decedent's injuries, asking us (under CPLR article 14-A) to allow a jury to apportion fault between decedent and Volkswagen for enhanced injuries resulting from Volkswagen's alleged failure to design a crashworthy car. Put differently, plaintiff seeks compensation only for the difference between decedent's actual injuries and those he claims he would have received had he not been driving a vehicle plaintiff alleges was improperly designed. While not without appeal, this argument is ultimately flawed.
We have stated that a plaintiff's conduct need not be the sole cause of injury for public policy to bar the suit. Rather, we held in language particularly apt here that "[a] plaintiff will be precluded from seeking compensation where his injuries were a [as opposed to the] direct result of a serious violation of the law" (Barker, 63 NY2d, at 26 [emphasis added]). This distinction involves a good deal more than semantics. It contemplates that comparative negligence principles do not apply in the preclusion context (see, id., at 28-29), and further, that the nature and origin of a defendant's duty is utterly irrelevant to the issue of whether the public policy of this State precludes a suit.
Here, decedent's accident resulted solely from his intoxicated driving. Moreover, his enhanced injuries were undisputedly a direct result of his drunk driving. That being so, the enhanced-injury claim should be barred under Barker.
Humphrey v State of New York (60 NY2d 742 [1983]) does not help plaintiff. The Humphrey Court did not confront or even consider the preclusion doctrine. The State did not argue *293 that Humphrey's decedent's conduct had been criminal or that his conduct should preclude her suit. Humphrey does not stand for the proposition that drunk driving is outside the scope of Barker-Manning preclusion or is anything but a serious violation of the law.
Although cited in both Barker and Manning,[4]Humphrey is distinguishable from the case before us. As the majority notes,
"In Humphrey the decedent's criminal act, intoxicated driving, was not the only cause of his accident. It occasioned the event. His reflexes were slowed, his judgment impaired, which combined with the State's negligent signing of the roadway and construction of a barrier, caused his death" (majority op, at 286).
In Humphrey, "the State's negligence contributed to decedent's fatal accident. Liability was assigned 60% to the State and 40% to decedent" (60 NY2d, at 743). Contrastingly, on the facts before us, there can be no apportionment of blame for the accident. The blame is entirely decedent's. Even if the alleged defect had contributed to the crash (it did not), plaintiff would still face the insurmountable language of Barker that precludes *294 suit where a plaintiff's serious violation of law is a direct cause of the injury. Thus, it is unavailing that an alleged design defect might also have been a direct cause of injury, and Humphrey cannot help plaintiff.
In sum, decedent's drunk driving was the sole cause of his accident and a direct cause of his injuries. Accordingly, the Barker-Manning rule cannot abide plaintiff's suit. For the foregoing reasons, I would affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] It may well be that many plaintiffs will not recover damages for their injuries because a Judge will conclude that intoxication was, as a matter of law, the sole cause of their injuries (see, e.g., Shevalier v Bentley, 268 AD2d 622; Hyland v Calace, 244 AD2d 318). Indeed, that would be the case here were it not for the alleged design defects in the vehicle.
[2] On this summary judgment motion, Volkswagen did not contest the adequacy of the expert's affidavit and report submitted by plaintiff. The Appellate Division's determination that Alami's intoxication was, as a matter of law, the "sole proximate cause" of the accident and decedent's injuries is therefore disturbing. We also have no occasion to address the impact of Geier v American Honda Motor Co. (529 US 861)rendered subsequent to Volkswagen's summary judgment motionon plaintiff's claim.
[1] Contrary to the majority's assertion, precluding this suit would not relieve Volkswagen of its obligation to manufacture safe cars (see, majority op, at 288). If a car manufacturer breaches its duty to design a safe automobile, that duty is (and should be) eminently enforceable by the universe of deserving plaintiffs. This Court did not "relieve" Manning and Barker of their respective duties to drive safely or refrain from helping to make a bomb. Preclusion operates not to extinguish a duty, but to prohibit a particular criminal plaintiff (or here, decedent's estate) from profiting by enforcing that duty.
[2] For example, in Johnson v State of New York (253 AD2d 274 [1999]), a State Trooper arrested the plaintiff's decedent but allegedly failed to guard him adequately. The decedent escaped and died. The Court held that the State had satisfied its duty of care to guard the decedent, and in any event, the escape was a serious criminal act warranting preclusion under Barker. In Johnson, as with the Barker burglar, the duty preceded the criminal act. It is difficult to see how this and other entirely proper applications of Barker and Manning can survive the majority's analysis (see, e.g., Phifer v State of New York, 204 AD2d 612, 613 [1994] [precluding suit by an intoxicated car thief alleging that the State breached its duty not to leave keys in the car]; Guadamud v Dentsply Intl., 20 F Supp 2d 433, 436-437 [ED NY 1998] [precluding products liability suit under Barker where the plaintiff unlicensed dentist was injured when equipment exploded in her hands]).
[3] According to the record, decedent's blood alcohol content was between 0.17 and 0.22%. Although we cannot say with precision what decedent's blood alcohol content was at the time of the accident, he was undeniably very drunk, approximately double the 0.10% limit of Vehicle and Traffic Law § 1192 (2).
[4] The propositions for which we cited Humphrey in Barker and Manning do not support plaintiff. In Barker, we stated that

"[a] complaint should not be dismissed merely because the plaintiff's injuries were occasioned by a criminal act (cf. Humphrey v State of New York, 60 NY2d 742, 744 * * *)" (Barker, 63 NY2d, at 25 [emphasis added]).
Humphrey did not deal with preclusion. It articulated basic tort principles under which the "mere" fact of a plaintiff's criminal conduct does not prevent the plaintiff from recovering. Here, plaintiff's suit should be barred not because decedent's injuries were "merely" occasioned by a criminal act, but because decedent's "serious violation of the law" (Barker, 63 NY2d, at 24 [emphasis added]) was the sole cause of his accident and a direct cause of his injuries.
In Manning, we observed that the plaintiff
"[sought] redress in connection with the very conduct that constitutes a violation of the law. Her injuries were the direct result of her knowing participation in joyriding (see, Barker v Kallash, supra, 63 NY2d, at 25, 32; cf., Humphrey v State of New York, 60 NY2d 742, 744)" (Manning, 91 NY2d, at 121).
In that passage, we compared Manning's conduct with Humphrey's decedent's conduct, and pointed out that Humphrey could maintain a cause of action even though there were other causes of the accident. In the case before us, however, decedent was solely responsible for his accident.
Thus, there is nothing in the Barker or Manning Court's "cf." citations to Humphrey, and nothing in Humphrey itself, that aids plaintiff here.