De'Ron Mirjah, Respondent, v New York City Transit Authority, Appellant. [853 NYS2d 148]—

In an action to recover damages for wrongful death and personal injuries, the defendant appeals from an order of the Supreme Court, Kings County (Solomon, J.), dated September 20, 2006, which denied its motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, and the motion for summary judgment dismissing the complaint is granted.

The plaintiff commenced this action, inter alia, to recover damages for wrongful death after the decedent was struck and killed by a subway train in the early morning hours of July 15, 2000 at the Parkside Avenue station in Brooklyn. The defendant moved for summary judgment dismissing the complaint. The Supreme Court denied the motion. We reverse.

A train operator may be found negligent if he or she sees a person on the tracks "from such a distance and under such other circumstances as to permit him [or her], in the exercise of reasonable care, to stop before striking the person," but does not do so (*Coleman v New York City Tr. Auth.,* 37 NY2d 137, 140 [1975]; *see Soto v New York City Tr. Auth.,* 6 NY3d 487 [2006]). Here, the defendant demonstrated, prima facie, that the train operator was not negligent in the happening of the decedent's death.

In support of its motion, the defendant presented, inter alia, the deposition testimony of the train operator Gary Ferreira. Ferreira's testimony may be summarized as follows: It was raining at the time in question, and the windshield wipers and lights on the train were activated. As he entered a bend before the Parkside Avenue station, Ferreira slowed the train by putting the throttle controller into "coast" mode and giving a "nip of brake." As he was about to enter the station, Ferreira observed

a person (the decedent) sitting in the middle of the train tracks, facing the oncoming train, "about" two car lengths ahead. Ferreira "immediately put the train in emergency" by taking his left hand off of the throttle controller, thereby activating the "deadman's feature," and "simultaneously" placing the emergency brake in "full service" mode with his right hand. The deadman's feature automatically engages in the train's braking system. However, the train continued to move and the decedent disappeared under the train. Ferreira called for help and then exited the train. The decedent was discovered under one of the cars of the train. An autopsy report listed the cause of death as multiple blunt impact injuries, and the manner of death as suicide. The certificate of death listed the manner of death as "undetermined." The autopsy report also noted that the decedent had a blood alcohol level of .24%, which was characterized by the defendant's expert as "gross intoxication." This evidence was sufficient to demonstrate, prima facie, that Ferreira exercised reasonable care and that the accident was unavoidable under the circumstances (see *Reeve v Long Is. R.R.*, 27 AD3d 636 [2006]; *Wadhwa v Long Is. R.R.*, 13 AD3d 615 [2004]).

In opposition, the plaintiff relied on the report of its expert Nicholas Bellizzi. However, neither the report nor any other evidence submitted by the plaintiff was sufficient to raise a triable issue of fact. Bellizzi's report may be summarized as follows: Based on Ferreira's testimony that he first observed the decedent when he was "about" two car lengths away, and the fact that the subject subway cars are 75 feet long, Bellizzi concluded that the decedent was 150 feet from the train when first observed by Ferreira. Further, based on Ferreira's testimony that he traveled faster than 20 miles per hour on the run between the Parkside Avenue station and the prior station, but that he could not recall whether he traveled faster than 25 miles per hour, Bellizzi concluded that a "speed in the range of 20-25 mph, or about 22.5 mph, was the maximum speed of the train" between the Parkside Avenue station and the prior station. Consequently, Bellizzi opined, given Ferreira's testimony that he slowed the train on the bend before the Parkside Avenue station, it was "reasonable to assume" that the train was traveling at less than 20 miles per hour when Ferreira first observed the decedent. Taking the distance figure of 150 feet, and a speed figure of 19 miles per hour, and applying data as to the stopping distances of subway cars, and as to median reaction times of drivers, Bellizzi concluded that Ferreira could have stopped the train in 139 feet, thereby missing the decedent by 11 feet. However, we find Bellizzi's conclusions to be merely speculative (cf. *Soto v New York City Tr. Auth.*, 6 NY3d 487

[2006]). In any event, even assuming that his conclusions were more than mere speculation, Bellizzi's report fails to identify a triable issue of fact as to whether the failure to stop the train in the distance described constituted a failure to exercise reasonable care under the circumstances. Indeed, given the close tolerances described, a contrary inference is clearly warranted. For example, even accepting all of Bellizzi's data, an increase in Ferreira's reaction time of just over one third of a second, or an increase in the speed of the train of just over one mile per hour, would result in the train still striking the defendant. Finally, we disagree with the proposition that either of two statements attributed to Ferreira in reports of the accident contradict or impeach his deposition testimony such that a triable issue of fact is raised. In sum, the defendant should have been granted summary judgment dismissing the complaint. Ritter, J.P., Santucci, Covello and Carni, JJ., concur.